UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN VERTEFEUILLE, | : | |
| Plaintiff, | : | |
| | : | PRISONER CASE NO: |
| v. | : | 3:07-cv-323 (JCH) |
| | : | |
| HOUDE, | : | MARCH 31, 2008 |
| Defendant. | : | |

**RULING RE: PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND ORDER TO SHOW CAUSE [Doc. No. 15]**

Plaintiff suffers from several mental illnesses including bipolar disorder. In this action, he alleges that the defendant, Health Services Administrator Houde, allows correctional staff to issue him disciplinary reports for exhibiting symptoms of bipolar disorder, in violation of departmental policy.[1] Plaintiff has filed a motion for preliminary injunction asking the court to order that he not receive disciplinary reports for exhibiting symptoms of bipolar disorder, not be housed in a restrictive housing unit except under emergency circumstances, be provided medication on an as needed basis by staff in lieu of restrictive confinement, and not be transferred to a general population housing unit. For the reasons that follow, plaintiff's motion for preliminary injunction is denied.

Interim injunctive relief "is an extraordinary and drastic remedy, one that should

---

[1]Administrative Directive 9.5, the Department of Correction Code of Penal Discipline, provides: "Before a class A disciplinary report is delivered to an inmates housed in a designated housing area for the mentally ill or inmates awaiting transfer to such a designated housing area, a qualified mental health professional shall be consulted and asked to express an opinion as to:
   1. whether the behavior for which the disciplinary report is given is the result of the inmate's mental illness; and
   2. whether disciplining the inmate would aggravate the inmate's mental illness.
... If the qualified mental health professional answers in the affirmative to either questions (1) or (2) above, the disciplinary report shall not be delivered to the inmate and shall be dismissed, unless the Unit Administrator directs in writing otherwise." Dep't of Correction Admin. Dir. 9.5, § 10.I (effective Jan. 1, 2008), http://www.ct.gov/doc (last visited Feb. 21, 2008).

not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (emphasis, internal quotation marks and citation omitted). "A party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 152-53 (2d Cir. 2007). If a party seeks a mandatory injunction, *i.e.*, an injunction that alters the status quo by commanding the defendant to perform a positive act, he must meet a higher standard. "[I]n addition to demonstrating irreparable harm, "[t]he moving party must make a clear or substantial showing of a likelihood of success" on the merits, . . . a standard especially appropriate when a preliminary injunction is sought against government." D.D. ex rel. V.D. v. New York City Bd. of Educ., 465 F.3d 503, 510 (2d Cir. 2006) (citations omitted). Here, plaintiff seeks an order that he not receive disciplinary reports, or that he receive sanctions of his choosing. Thus, plaintiff must meet the higher standard for mandatory injunctive relief.

Although a hearing is generally required on a properly supported motion for preliminary injunction, a party may waive his right to an evidentiary hearing. See Charette v. Town of Oyster Bay, 159 F.3d 749, 755 (2d Cir. 1998) (citing cases). Here, plaintiff waived his right to an evidentiary hearing by asking the court to decide his motion on the papers. See Mot. for Prelim. Inj. at 3 (Doc. No. 15). Waiving his right to a hearing, however, does not entitle plaintiff to have the court accept his allegations as true if those allegations are contested by the defendants. See Charette, 159 F.3d at

2

755.

Defendant argues that a preliminary injunction against her in her official capacity is not warranted in this case because plaintiff cannot establish a likelihood of success on the merits of his claim. She also contends that preliminary injunctive relief against her in her individual capacity is moot because she no longer is assigned to Garner Correctional Institution.

A request for preliminary injunctive relief becomes moot when the relief can no longer be provided. Defendant states that she no longer works at Garner Correctional Institution and no longer reviews plaintiff's disciplinary reports. See Houde Aff. ¶¶ 3-4 (Doc. No. 22-3). Thus, preliminary injunctive relief against defendant in her individual capacity would afford no benefit to plaintiff. See Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). The motion for preliminary injunction is denied as moot against the defendant in her individual capacity. Because another state official now reviews plaintiff's disciplinary reports, the court considers the motion against defendant in her official capacity.

Plaintiff describes his claim as defendant's failure to follow the exception in Administrative Directive 9.5 and the settlement agreement in OPA v. Choinski, No. 3:03cv1352 (RNC), both of which preclude issuing disciplinary reports to mentally ill inmates for conduct resulting from their mental illness if issuance of the report would aggravate the illness.[2] The OPA v. Choinski settlement agreement specifically provides

---

[2]Plaintiff has filed a document entitled "return to defendants motion of 'memorandum of law in opposition to motion for preliminary injunction' dated 2-15-08," which addresses the

3

that there are no third party beneficiaries to the agreement.  See  Proposed Settlement Agreement ¶ 14 (Doc. No. 22-7).  Thus, the agreement affords plaintiff no rights and he cannot file suit to enforce the agreement.  In addition, plaintiff has no federally cognizable right to an injunction directing defendant, in her official capacity, to comply with a state prison directive.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 103-06 (1984) (Eleventh Amendment prevents suit requiring state official to follow state law).

The court construes the Complaint as asserting a claim that punishing an inmate for conduct resulting from his mental illness constitutes deliberate indifference to a serious mental health need in violation of the Eighth Amendment.

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  See Wilson v. Seiter, 501 U.S. 294, 297 (1991).  He must show more than negligence, "but less than conduct undertaken for the very purpose of causing harm."  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994). The test is twofold.  First, the prisoner must show that there was a sufficiently serious medical or mental health need.  See Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  See id.  Prison officials must be

---

opposition to his January 23, 2008 motion for preliminary injunction, not the February 15, 2008 motion.  The court reviewed those filings in connection with this Ruling.  He references various other cases cited in support of his motion to challenge defendant's characterization of his claim as based on the settlement agreement in the OPA v. Choinski case.  None of these cases, however, afford any specific federal rights to Connecticut inmates.

4

"intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Disagreement over proper treatment or diagnosis does not create a constitutional claim as long as the treatment was adequate. See id. at 107.

Plaintiff states that he suffers from bipolar disorder. He also has been diagnosed with impulse control disorder and antisocial personality disorder. See Ducate Aff. ¶¶ 11-15 (Doc. No. 22-4). Dr. Ducate, a forensic psychologist employed as the Director of Psychiatric Services for the Connecticut Department of Correction, has reviewed plaintiff's medical records and disciplinary history. She describes bipolar disorder as "characterized by months of depression alternating with weeks of mania, sometimes accompanied by psychosis." Id. ¶ 147. In contrast, plaintiff's mood and behavior, as described in his medical records, change daily or hourly. Dr. Ducate observed that, with regard to the matters at issue in this case, plaintiff does not exhibit "a pattern of mood instability consistent with bipolar disorder." Id. Instead, his pattern of well planned behavior with clearly described motivation is indicative of antisocial personality disorder. Self-mutilation, such as plaintiff's repeated banging his head against the cell wall until he requires sutures, is not a symptom of bipolar disorder. Rather, it is a common symptom of severe personality disorders, such as antisocial personal disorder. Other common symptoms of antisocial personality disorder are difficulty with authority figures, aggressive and violent behavior, inability to tolerate boredom, impulsiveness, disregard for rights and boundaries of others, and a sense of entitlement. See id. ¶¶ 24-25. Holding an individual accountable for his actions is an accepted treatment for antisocial personality disorder. See id. ¶ 147.

5

In her review of plaintiff's disciplinary history, Dr. Ducate notes that, after each incident, a mental health staff member interviewed plaintiff to determine whether he could be held accountable for his actions. If the staff member concluded that the disciplinary charge would aggravate plaintiff's condition, the charge was dismissed. See id. ¶¶ 37, 45, 66-67, 76-77, 86-87, 90, 106, 108, 112, 119-20, 124-26. Dr. Ducate opined that mental health staff have complied with the administrative directive.

Plaintiff concedes that impulsive actions are a symptom of antisocial personality disorder. See Dep. at 43 (Doc. No. 22-3). He also has told mental health staff that his actions were the results of dissatisfaction with his conditions of confinement or the failure of correctional staff to respond immediately to his concerns. See Ducate Aff. ¶¶ 38, 39, 40, 44, 45, 49, 55, 62, 66-67, 75-78, 81, 82, 84-86, 93, 106, 108, 120-21, 130-35. However, he argues that, regardless whether his actions were intended to manipulate staff or were taken in retaliation for what he considered improper treatment, he should not receive a disciplinary report if the conduct could in any way be connected with bipolar disorder. See Dep. at 60-61, 109. Plaintiff's disagreement with the opinion of Dr. Ducate and conclusion that his actions were symptoms of bipolar disorder is based on his interpretation of pamphlets describing bipolar disorder. See id. at 25-27. He provides no medical opinion that the general statement that an individual with bipolar disorder may act impulsively required a conclusion that plaintiff's actions of ripping his mattress, flooding his cell, breaking the cell light fixture and window, and banging his head against the wall are the result of bipolar disorder. Plaintiff has identified, at most, only a difference of opinion regarding the cause of his actions and the propriety of issuing disciplinary reports. He has not shown a likelihood of success

on the merits of his claim, let alone a clear or substantial showing.

Therefore, plaintiff's Motion for Preliminary Injunction and Order to Show Cause [**Doc. No. 15**] is **DENIED**.

**SO ORDERED.**

Dated this 31st day of March 2008, at Bridgeport, Connecticut.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge